UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~

JEROD CROSBY,

                Petitioner,

    - vs -                       9:10-CV-0174 (DNH)

JAMES T. CONWAY,

                Respondent.

~~~~~~~~~~~~~~~~~~~~~~~~~

APPEARANCES:                            OF COUNSEL:

JEROD CROSBY
Petitioner, *Pro Se*
98-B-1247
Eastern Correctional Facility
Box 338
Napanoch, NY 12458

HON. ERIC T. SCHNEIDERMAN        LEILANI J. RODRIGUEZ, ESQ.
Attorney General                        Assistant Attorney General
New York State Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

**I. Background**

    **A. State Court Proceedings**

The state court record reflects that in the afternoon hours of July 30, 1997, Larry Lewis, Jr. ("Lewis"), John Dell Middlebrooks ("Middlebrooks"), and petitioner, *pro se* Jerod Crosby ("Crosby" or "petitioner") were at the Southwest Community Center

in Syracuse, New York. *See* Transcript of Trial of Jerod Crosby (5/26/98) (Dkt. No. 13-16) ("Trial Tr.") at pp. 295-96. Sometime that afternoon, Cheiron Thomas ("Thomas") observed Lewis and Middlebrooks involved in an altercation during which Lewis pointed a gun at Middlebrooks. *Id.* at p. 298. Thomas and another individual intervened, however, *id.* at p. 299, and the confrontation ended with Lewis and Middlebrooks shaking hands and everything was "fine." *Id.* at pp. 300-01. Later that night, Lewis went to a party on Merriman Avenue in Syracuse, where Middlebrooks and Crosby were present. *Id.* at pp. 301-02. Lewis and Middlebrooks again began to argue, *id.* at p. 303; however, as with their earlier confrontation, the incident ended with the two men shaking hands. *Id.* Soon afterward, Sean Berosh ("Berosh"), who was also at the party, grabbed a microphone and said: "Niggers pulling guns out on my man and not using it." *Id.* at p. 304. Around that time, Consuela Kent ("Kent") saw Crosby approach Lewis and put a gun to the back of Lewis's head. *Id.* at p. 376. Crosby's actions caused Kent to run from the scene. Soon thereafter she heard a "pop." *Id.* at p. 377. Crosby also left the area, *id.* at pp. 330-31, and Kent and others then persuaded someone to place a call to 911 seeking emergency assistance. *Id.* at p. 382. Police officers arrived at the scene shortly thereafter. *Id.*

As a result of the foregoing, an Onondaga County grand jury returned an indictment against Crosby which charged him with second degree, intentional murder of Lewis, and criminal possession of a weapon in the second degree. *See* Trial Tr. at pp. 689-95.[1]

---

[1] A copy of the indictment returned against Crosby by the Grand Jury was not filed.

Crosby's jury trial on the foregoing charges commenced in Onondaga County Court on May 26, 1988, with County Court Judge William J. Burke presiding. At that proceeding, the prosecution called an acquaintance of Crosby, Maykeyla Drake ("Drake"), in its case in chief. Trial Tr. at pp. 603-04. Drake testified that she and Crosby had discussed the shooting, and he informed her that he had shot Lewis because "J.D. told [Crosby] to do it." *Id.* at p. 607.[2] He told Drake that he did not want to surrender to authorities because he was "scared of going to jail." Trial Tr. at p. 608. Detective Mark Abraham ("Detective A") of the Syracuse Police Department testified that when he was provided with information which implicated Crosby in Lewis's death, he went to Coolidge Avenue where Crosby was believed to reside in Syracuse. *Id.* at pp. 597-99. During his search of that location, Detective A eventually found Crosby hiding in a closet underneath a pile of clothes, *Id.* at p. 598, and took him into custody. While Crosby was being searched, Detective A found a newspaper clipping on his person that contained an article which noted that the police wished to question him about Lewis's homicide. *Id.* at p. 599. Dr. Mary Jumbelic, Chief Medical Examiner for the Onondoga County Health Department, testified about the autopsy performed on Lewis by her office. *Id.* at p. 557. She testified that Lewis had sustained a single gunshot wound to his head just behind his left ear. *Id.* at p. 559. The bullet traveled through his brain, causing his death. *Id.* at pp. 559-63.

At the conclusion of his trial, Crosby was convicted of murder in the second degree and criminal possession of a weapon in the second degree. *Id.* at pp. 710-12.

---

[2] Drake further testified that "J.D." was a nickname for John Dell Middlebrooks. Trial Tr. at pp. 608-09.

On June 17, 1998, Crosby was sentenced to indeterminate terms of twenty-five years to life imprisonment on the murder conviction, and seven and one-half to fifteen years imprisonment for the weapons possession conviction. *See* Transcript of Sentencing of Jerod Crosby (6/17/98) (Dkt. No. 13-17) at p. 10. The sentences were ordered to run consecutively. *Id.*

On February 24, 1999, Crosby's assigned counsel filed an appellate brief on his behalf in which it was argued that: (1) the County Court illegally imposed consecutive sentences; (2) the sentences were harsh and excessive; and (3) the verdict was against the weight of the evidence. *See* Dkt. No. 13-3. The Onondaga County District Attorney's Office ("DA") submitted a brief opposing the appeal. Dkt. No. 13-4. A reply brief was submitted. Dkt. No. 13-5. On October 1, 1999, the New York State, Supreme Court, Appellate Division, Fourth Department affirmed the convictions, but it modified the sentences and ordered them to run concurrently. *People v. Crosby*, 265 A.D.2d 858 (4th Dept. 1999). Leave to appeal the decision from the New York Court of Appeals was denied. *People v. Crosby*, 94 N.Y.2d 821 (1999).

On January 23, 2007, Crosby filed a motion to vacate the convictions pursuant to New York Criminal Procedure Law ("CPL"), § 440.10. *See* Dkt. No. 13-8 ("CPL Motion"). He argued that the convictions should be set aside because he was unable to understand the nature of the criminal proceedings below. *Id.* In opposing the application, the DA filed an answering affirmation completed by Chief Assistant District Attorney James P. Maxwell, Esq. ("ADA Maxwell"). *See* Dkt. No. 13-9 ("Maxwell Aff.") ADA Maxwell noted that prior to the trial – on February 12, 1998 – Dr. Marilyn S. Ward ("Dr. Ward") had conducted a mental examination of Crosby pursuant to the Trial

- 4 -

Court's order directing such an examination under CPL § 730.  Maxwell Aff. at p. 1.  Dr. Ward concluded that Crosby "did not have a mental disease or defect that would interfere with his ability to understand the proceedings against him or to assist in his defense."  *Id.*  On April 11, 2007, petitioner filed a supplemental brief in further support of his CPL Motion.  Dkt. No. 13-10.

On June 29, 2007, the County Court issued a Decision/Order that denied Crosby's CPL Motion.  *See* Dkt. No. 13-11.  In support of the decision, the court initially found that because facts appeared in the record that would have enabled him to raise his claim regarding his mental competency on his direct appeal, he was procedurally barred from obtaining the relief he sought in his CPL Motion.  *Id.* at pp. 3-4.  The court additionally found that the documentation submitted in support of his claim failed to establish that he was, in fact, incompetent at the time. (Crosby had claimed that he lacked the mental capacity to understand the proceedings that were occurring at his trial.) *Id.* at p. 4.  On August 28, 2007, he sought leave to appeal that decision from the Fourth Department.  *See* Dkt. No. 13-12.  The DA opposed the application, *see* Dkt. No. 13-13, and on February 2, 2009, leave to appeal was denied.  *See* Dkt. No. 13-14.

### B.  This Action

Crosby commenced this action on January 18, 2010, by filing a petition seeking a writ of habeas corpus.  *See* Petition (Dkt. No. 1) ("Petition") at p. 9.  Because that pleading was deficient in several respects, on February 25, 2010, petitioner was directed to file an amended petition if he wished to proceed with this action.  Dkt. No. 5.  On April 2, 2010, he filed an amended pleading.  *See* Dkt. No. 6

("Amended Petition"). In the amended pleading, petitioner claims that: (1) in opposing his CPL Motion, the prosecution wrongfully argued that he was procedurally barred from obtaining the relief he sought; (2) the County Court improperly failed to conduct a hearing relating to his CPL Motion; (3) appellate counsel's ineffectiveness was sufficient cause to overcome any procedural default concerning his failure to assert a claim relating to his mental competency in his direct appeal; and (4) County Court's denial of his CPL Motion amounted to a violation of his constitutional rights. *See* Amended Petition at pp. 6-9.

On September 17, 2010, the Office of the Attorney General of the State of New York, acting on respondent's behalf, filed a motion to dismiss the Amended Petition. *See* Dkt. No. 13 ("Motion to Dismiss"). In support of that application, respondent claims that this matter was not timely filed in light of the one-year statute of limitations applicable to federal habeas, and that his Amended Petition must therefore be dismissed as untimely. *See* Motion to Dismiss at pp. 12-16.

On September 24, 2010, Crosby filed a memorandum of law in opposition to respondent's motion to dismiss. *See* Dkt. No. 15 ("Opposition"). In opposing respondent's motion, petitioner argues that this matter was timely filed because the applicable statute of limitations was tolled due to his mental illness. *Id.*

## II. Discussion

### A. Governing Statute of Limitations

Enactment by Congress of the Anti-terrorism and Effective Death Penalty Act ("AEDPA") brought about significant changes to the prisoner litigation landscape. One of those was the institution of a one-year statute of limitations for habeas corpus

petitions filed after April 24, 1996. *See* 28 U.S.C. § 2244(d). That section provides that:

> (1) A one year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the criminal matter below, the Appellate Division affirmed Crosby's conviction on October 1, 1999, and the Court of Appeals denied him leave to appeal on November 15, 1999. *Crosby*, 94 N.Y.2d at 821. The conviction therefore became final on Monday, February 14, 2000, the date on which his time to seek a writ of *certiorari* from the Supreme Court expired. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). Petitioner accordingly had one year from that date, or until February 14, 2001, to file his petition. *See* 28 U.S.C. § 2244(d)(1)(A).

However, as noted above, the AEDPA's statute of limitations may be tolled during the pendency of a properly filed state application seeking post-conviction relief. Crosby filed his CPL Motion on January 23, 2007. *See* CPL Motion at p. 7. However, by the time that matter was filed, the statute of limitations applicable to this action had long ago expired, and petitioner's filing of his CPL Motion in January 2007, did not "restart" the statute of limitations applicable to his habeas action. *Johnson v. Bellnier*, No. 09-CV-0381, 2009 WL 790342, at *2 (E.D.N.Y. Mar. 24, 2009) (citing *Smith v. McGinnis*, 208 F.3d 13 (2d Cir. 2000)).

A habeas petition which would otherwise be subject to dismissal in light of the AEDPA's statute of limitations may nevertheless be considered if it is determined that the limitations period should be equitably tolled. *Holland v. Florida*, ___ U.S. ___, 130 S.Ct. 2549, 2560 (2010); *see also Smith*, 208 F.3d at 17-18. Additionally, although the Second Circuit has acknowledged that the "question remains open" as to whether the United States Constitution requires that an "actual innocence" exception be engrafted onto the AEDPA's statute of limitations, *see Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003); *Nevarez v. Conway*, No. 09 CIV 8220, 2011 WL 102711, at *4 (S.D.N.Y. Jan. 5, 2011) (citations omitted), the Second Circuit has nonetheless directed district courts to consider a claim of actual innocence before dismissing a habeas petition as untimely filed. *Whitley*, 317 F.3d at 225; *see also Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (citing *Whitley*); *Nevarez*, 2011 WL 102711, at *4.

### B. Equitable Tolling

A habeas petitioner is entitled to equitable tolling in this context if he establishes: " '(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way' and prevented timely filing" of the habeas petition.  *Holland*, ___ U.S. at ___, 130 S.Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (emphasis deleted); *see also Menefee*, 391 F.3d at 159 ("in 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period" imposed by the AEDPA).

In opposing respondent's Motion to Dismiss, petitioner claims that he has "been pursuing [his] rights diligently," and argues that it was "essential" that he sought leave to appeal the denial of his CPL Motion from the Appellate Division.  *See* Opposition at p. 2.  He then seems to argue that because he is "possibly incompetent," it would be improper to deny his Amended Petition without addressing the merits of same.  *Id.* at p. 3.  He concludes his memorandum by asserting that it would be "just" for this Court to find that his habeas petition was timely filed.  *Id.* at p. 4.  Thus, construed liberally, it appears as though Crosby claims that the statute of limitations should be equitably tolled because he lacked the mental capacity to file the CPL Motion during the substantial period of time that elapsed between the time his judgment of conviction became final and the date on which he filed his CPL Motion.[3]

The mental impairment of an individual may provide a federal district court with a basis upon which to equitably toll the AEDPA's statute of limitations.  *See Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (holding that equitable tolling of AEDPA's statute of limitations due to mental illness may be warranted if habeas

---

[3] Even a liberal reading of Crosby's *pro se* submissions fails to reveal any argument that from the time the Appellate Division denied him leave to appeal the denial of his CPL Motion to the date on which he commenced this action, his mental illness prevented him from commencing this action.

petitioner demonstrates that illness "constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so").

Less than two months after Crosby was sentenced on the above convictions, he was committed as a mental patient to the Central New York Psychiatric Center ("CNY Psych Center") for twenty-eight days. *See*, *e.g.*, CPL Motion at p. 6; Maxwell Aff. at p. 3 (DA noting that he was confined to the CNY Psych Center from August 11, 1998 to September 8, 1998). In opposing the CPL Motion, the DA further noted that he had additionally been committed to that facility from November 7, 2000, through December 27, 2000. Maxwell Aff. at p. 3.

Since Crosby's conviction did not became final for purposes of the AEDPA until February 14, 2000, the state of his mental health from August 11, 1998, to September 8, 1998 – the period of time during which he was initially committed to the CNY Psych Center – would have no effect on the statute of limitations applicable to this action because same had not yet begun to run. However, his placement in that facility from November 7, 2000, through December 27, 2000, strongly suggests that for that period of time, the governing limitations period should be equitably tolled. By that time, however, 267 days of the AEDPA's limitation period – the period of time from the date on which his conviction became final (i.e., February 14, 2000) through and including November 6, 2000 – had already run. His placement in the CNY Psych Center on November 7, 2000, however, may properly be found to have tolled the statute of limitations, which tolling continued through his discharge from that facility on December 27, 2000.

Significantly, Crosby has failed to provide any documents, or otherwise provide any citations to the record, which would support a finding that he suffered from a mental impairment subsequent to his release from the CNY Psych Center on December 27, 2000. *See* Opposition. The petitioner bears the burden of proving that he is entitled to equitable tolling of the AEDPA's statute of limitations. *See Bolarinwa*, 593 F.3d at 232; *Fleegle v. Conway*, No. 9:08-CV-0771, 2010 WL 4365659, at *6 (N.D.N.Y. Aug. 5, 2010) (Peebles, M.J.) (citing *Bolarinwa*), *adopted*, *Fleegle v. Conway*, No. 9:08-CV-0771, 2010 WL 4316572 (N.D.N.Y. Oct. 26, 2010) (McAvoy, S.J.). His failure to provide evidence supporting a claim that his mental state after December 27, 2000, impaired his ability to timely commence this action represents his failure to shoulder his burden of proving that he is entitled to equitable tolling during that period of time.

Moreover, a review of the docket of the Northern District of New York reveals that during the period of time that Crosby claims he is entitled to the assistance of counsel, a civil rights action was filed in this District pursuant to 42 U.S.C. § 1983. *See Crosby et al. v. Walsh*, No. 00-CV-0052 (NAM)(DEP) ("00-CV-0052").[4] Significantly, in the Stipulation of Discontinuance filed on November 27, 2001, in 00-CV-0052 27, 2001, Crosby's counsel stipulated and agreed to the fact that no party to such action was, *inter alia*, an "incompetent person." *See* 00-CV-0052, Dkt. No. 52. Thus, the objective evidence plainly supports the determination that petitioner

---

[4] It is noted that the Jerod Crosby who commenced 00-CV-0052 is the same individual as the petitioner; both individuals have the same "DIN" number assigned by the New York State Department of Correctional Services. *Compare* 00-CV-0052, Dkt. No. 30 (order from United States Magistrate Judge David E. Peebles directing the production of "Jerod K. Crosby, DIN # 98B1247" for a video deposition, *with* Amended Petition at p. 1 (Crosby noting that his inmate number is "98-B-1247").

was *not* mentally ill from the date of his discharge from the CNY Psych Center on December 27, 2000 until January 23, 2007 – the date on which he filed his CPL Motion.

Additionally, Crosby has not articulated any basis – other than his alleged mental incompetence – upon which it may properly be found that he is entitled to equitable tolling of the governing statute of limitations.

Based upon the foregoing, the AEDPA's statute of limitations began to run anew the day after Crosby was released from the CNY Psych Center, and continued running for a period of 2,217 days, until he filed his CPL Motion on January 23, 2007. When the Fourth Department denied him leave to appeal the denial of his CPL Motion on February 2, 2009, *see* Dkt. No. 13-14, the applicable limitations period again began to run, and continued to run, for another 350 days, until January 18, 2010 – the date on which he signed his Petition. *See* Dkt. No. 1 at p. 9. Therefore, excluding the periods of time during which he was confined to a mental institution and his CPL Motion was pending in the state courts, petitioner commenced this action some 2,834 days after his conviction became final, or 2,469 days after the applicable statute of limitations had expired. Since nothing suggests that he is entitled to any additional tolling of the AEDPA's statute of limitations during that substantial period of time, the present action is plainly barred by the AEDPA's statute of limitations.

C. **Actual Innocence**

Considering whether Crosby has asserted a credible claim of actual innocence concerning the murder and criminal possession of a weapon convictions, it is noted that petitioner did not assert in the state courts, and has not claimed in the present

action, that he is actually innocent of these crimes. *See* Amended Petition, Grounds One through Four; *see also* Opposition. Moreover, the state court record filed by the respondent supports the determination of the Fourth Department that the evidence adduced at trial was legally sufficient to demonstrate that Crosby had participated in the "calculated, execution-style killing" of Lewis. *See Crosby*, 265 A.D.2d at 858.

Since Crosby has failed to assert – much less establish – a credible claim of actual innocence in this action, he cannot now seek safe harbor from the dismissal of his untimely filed action based upon this final (potential) exception to the AEDPA's statute of limitations. *E.g., Menefee*, 391 F.3d at 161; *Nevarez,* 2011 WL 102711, at *4.

In sum, Crosby has failed to demonstrate that his patently untimely filing of this action by invoking the doctrine of equitable tolling throughout the substantial period of time that elapsed between the time his conviction became final and the date on which he commenced this action may be excused. Additionally, he has failed to demonstrate that he is actually innocent of either of the crimes of which he was convicted. Therefore this action will be dismissed as untimely filed in light of the AEDPA.

### III. **CERTIFICATE OF APPEALABILITY**

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained

of arises out of process issued by a State court . . . .[5]

28 U.S.C. § 2253(c)(1)(A). A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Crosby has failed to make such a showing. A Certificate of Appealability will be declined.

THEREFORE, it is

ORDERED, that:

1. Respondent's Motion to Dismiss (Dkt. No. 13) is GRANTED;

2. Petitioner's Amended Habeas Petition (Dkt. No. 6) is DENIED and DISMISSED;

3. A Certificate of Appealability will not be issued; and

4. The Clerk is directed to serve a copy of this Memorandum-Decision and Order on the parties in accordance with this District's Local Rules and close the file.

IT IS SO ORDERED.

United States District Judge

Dated: February 22, 2011
　　　　Utica, New York.

---

[5] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed. R. App. P. 22(b).